IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AS ENGINE LEASING, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 14 C 1436 |
| VISION AIRLINES, INC., | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Judge:

On February 27, 2014, plaintiff AS Engine Leasing, LLC ("AS Engine") filed an amended complaint alleging two counts of breach of contract against defendant Vision Airlines, Inc. ("Vision"). (Dkt. No. 22 ("Am. Compl.")) On May 2, 2014, Vision filed a motion to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Dkt. No. 25.) For the reasons set forth below, the court grants Vision's motion.

BACKGROUND

This litigation arises out of a lease (the "Lease") between AS Engine and Vision for an aircraft engine, which AS Engine accuses Vision of breaching. AS Engine is a limited liability company organized under the laws of the state of Delaware. (Am. Compl. ¶ 2) The sole member of AS Engine is Aviation Sales, LLC, which is also organized under the laws of the state of Delaware. (*Id.*) The sole member of Aviation Sales, LLC is Victoria Ricks ("Ricks"), an individual who resides in Chicago, Illinois. (*Id.*) Vision is a corporation organized under the laws of the state of Nevada with its principal place of business in North Las Vegas, Nevada. (Dkt. No. 26, Ex. A ("Acor Aff.") ¶¶ 3, 4.) Vision is not registered to do business in Illinois and has no

operations in Illinois. (*Id.* ¶ 4.) Vision does not own any assets or property in Illinois, and it does not have any bank accounts in Illinois. (*Id.* ¶ 12.)

In April 2013, David Meers, then the Senior Vice President of Vision, contacted BCI Aircraft Leasing, Inc. ("BCI") in an effort to lease two aircraft engines. (Dkt. No. 55, Ex. 1 ("Meers Decl.") ¶¶ 1, 4.) Meers' primary contact at BCI was Brian Hollnagel ("Hollnagel"). (*Id.*) On April 12, 2013, BCI presented Vision a "Proposal Letter" summarizing the terms and conditions for a lease of two engines. (Dkt. No. 55, Ex. 1, at 8-11.) Both Hollnagel and Meers executed the proposal. (Meers Decl.¶ 5.) In May 2013, however, BCI informed Meers that it was not interested following through with their proposed transaction, but suggested that Ricks may be interested in leasing engines to Vision. (*Id.* ¶ 7.) Hollnagel informed Ricks, who is his wife, about the opportunity to lease an engine to Vision. (Ricks Decl. ¶ 3.) Ricks then created AS Engine, and it acquired the engine at issue in this case (the "Engine") to lease to Vision. (*Id.* ¶¶ 5, 6.) Meers consequently negotiated the Lease with AS Engine. (Meers Decl. ¶ 7.)

Meers executed the Lease on behalf of Vision in Miami, Florida. (Accor Aff. ¶ 9.) On May 12, 2013, Ricks received a copy of the partially executed Lease while in Illinois. (Ricks Decl. ¶ 3.) Ricks executed the Lease and returned it to Vision. (*Id.* ¶ 7.) Pursuant to the terms of the Lease, Vision paid a security deposit, rent, and maintenance reserves to Aviation Sales, LLC's bank account, which is located in Chicago, Illinois. (*Id.* ¶ 8.)

Vision accepted delivery of the Engine at the Aviation Repair Technologies facility located in Blytheville, Arkansas. (Accor Aff. ¶ 12.) The Engine is currently located in Mexico City, Mexico. (*Id.* ¶ 13.) AS Engine alleges that Vision has failed to make payments of rent and maintenance reserves when due. (Am. Compl. ¶¶ 46-55.) AS Engine further alleges that Vision has failed to return the Engine in accordance with the conditions set out in the Lease. (Am. Compl. ¶¶ 56-63.)

## LEGAL STANDARDS

Rule 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party. Fed.R.Civ.P. 12(b)(2). Once the defendant moves to dismiss a complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In ruling on a motion to dismiss, a court may consider matters outside of the pleadings. *See id.* When a court rules on personal jurisdiction based on the submission of written materials without holding an evidentiary hearing, the plaintiff is only required to make a *prima facie* case of personal jurisdiction. *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). If the defendant has submitted evidence in opposition to the implementation of jurisdiction, however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 782–83. In determining whether the *prima facie* standard has been satisfied, the court resolves any conflicts in affidavits or other supporting materials in the plaintiff's favor. *Id.* at 782 (quoting *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

ANALYSIS

"A federal court sitting in diversity has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997)) "An Illinois state court has personal jurisdiction when the Illinois long-arm statute, the Illinois state constitution and the due process clause of the federal constitution authorize it." *Joy v. Hay Group, Inc.*, No. 02 C 4989, 2003 WL 22118930, at *3 (N.D. Ill. Sept. 11, 2003) (citing *Cent. States, S.E. and S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000)).

The Illinois Long–Arm Statute permits personal jurisdiction on any basis permitted by the due process clauses of the Illinois and United States Constitutions. 735 Ill. Comp. Stat. 5/2–209(c). Although the Illinois Supreme Court has noted that the Illinois constitutional due process requirement is distinct from the federal requirement, *see Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990), the Seventh Circuit has determined that because there is no operative difference between the Illinois and federal due process standards, a single due process analysis is sufficient. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757 (7th Cir. 2010).

Personal jurisdiction under the federal due process clause requires that "the defendants must have minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted)). The United States Supreme Court has "framed the constitutional inquiry in terms of whether the defendant purposefully avails itself of the benefits and protections of conducting activities in the forum state." *Mobile Anesthesiologists Chicago, LLC*

4

*v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010) (internal quotation marks omitted). To be subject to personal jurisdiction, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum state' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel*, 536 F.3d at 61 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

The United States Supreme Court recently confirmed its adherence to the distinction between "general jurisdiction" and "specific jurisdiction." *See Daimler AG v. Bauman*, 134 S.Ct. 746, 754-55 (2014). A foreign corporation is subject to general jurisdiction "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." *Id.* at 751. To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must "directly relate to the challenged conduct or transaction." *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citing *Logan Prod. v. Optibase*, 103 F.3d 49, 52 (7th Cir. 1996). Here, AS Engine concedes, and the court agrees, that there is no basis for exercising general personal jurisdiction over Vision. AS Engine argues, however, that this court has specific personal jurisdiction over Vision.

"With respect to contract disputes, contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Northern Grain*, 743 F.3d at 493 (quotation marks and citations omitted). Beyond the mere existence of a contract, this court, sitting in Illinois, must examine several factors including (1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically

5

present in Illinois in connection with the contract; (4) whether the Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois. *See Citadel Group Ltd. v. Merle West Medical Center, Inc.*, No. 06-C-6162, 2007 WL 5160444, at *3 (N.D.Ill. June. 13, 2007). None of these factors alone is necessarily sufficient for the court to exercise personal jurisdiction, but each is relevant and can support an exercise of jurisdiction. *See id.* The specific jurisdiction inquiry is one of the totality of the circumstances. *Citadel*, 536 F.3d at 761.

It is undisputed in this case that Vision reached into Illinois when Meers contacted BCI in an effort to lease aircraft engines. However, Vision did not consummate a transaction with BCI, and BCI is not a party in this matter. Instead, after BCI informed Vision that it was no longer interested in following through with their proposed transaction, BCI suggested Meers that Ricks might be interested in leasing an engine to Vision.

What transpired next is disputed. Vision contends that it did not initiate discussions with AS Engine, but was contacted by AS Engine regarding a potential transaction. (Accor Aff. ¶ 6.) AS Engine argues that Hollnagel was acting as its agent, and therefore Meers' initial email to Hollnagel demonstrates that Vision initiated the transaction with AS Engine. (Ricks Decl. ¶ 4; Dkt. No. 55 at 5.) However, the record does not support AS Engine's conclusory assertion that Hollnagel was acting as its agent. AS Engine does not point to any evidence indicating that Meers should have had reason to believe he was dealing AS Engine when he was communicating with Hollnagel. To the contrary, AS Engine submitted a copy of the email exchange between Meers and Hollnagel, which shows that Meers sent his initial inquiry to Hollnagel's BCI email address. (Dkt. No. 55, Ex. 1, at 6-7.) After the initial email exchange, Meers and Hollnagel executed a "Proposal Letter" on BCI letterhead. (Dkt. No. 55, Ex. 1, at 8-11.)

The court is required to resolve factual disputes in favor of AS Engine, but the court does not view this as a genuine factual dispute. AS Engine's conclusory allegation, which is controverted by the record, is insufficient to carry its burden to produce evidence supporting jurisdiction. *See Purdue*, 338 F.3d 773, 783 & n. 13 (7th Cir. 2003) (citing *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir.2002) ("Where, as here, the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction")). Accordingly, the court does not find that Vision initiated contact with AS Engine. Moreover, even if the court were to construe the dispute as to which party initiated contact in favor of AS Engine, the identity of the party who initiated contact is not dispositive to a determination of personal jurisdiction. *See Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir. 1996) ("[T]he constitutionality of jurisdiction does not turn on which party 'started it.'").

It is undisputed that no Vision employee ever set foot in Illinois in connection with the Lease. Vision signed the Lease while in Florida and AS Engine signed the Lease while in Illinois. Of course, physical presence in Illinois is neither necessary nor sufficient to subject a non-resident to personal jurisdiction. *See Burger King*, 471 U.S. at 476 ("It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted...."). Isolated communications may not provide a basis for asserting personal jurisdiction, but telephone and email communications are relevant when considering the totality of a defendant's contacts with the forum state. *See Felland v. Clifton*, 682 F.3d 665, 679 (7th Cir. 2012) (clarifying that letters, phone calls and emails do not always

establish minimum contacts); *Abbott Labs., Inc. v. Bio Valve Technologies, Inc.*, 543 F.Supp.2d 913, 921 (N.D.Ill. 2008) (finding that sustained telephone and e-mail communications or the course of seven months were not "random, fortuitous, or attenuated."); *Vasilj v. Duzich*, No. 07 C 5462, 2008 WL 2062371, at *4 (N.D.Ill. May 13, 2008) (finding that a steady stream of communications from defendant into Illinois was a significant factor in establishing minimum contacts).

Vision and AS Engine clearly exchanged some communications while negotiating and executing the Lease. For example, Ricks claims that Vision sent her a partially executed copy of the Lease. (Ricks Decl. ¶ 7.) AS Engine further argues that Vision's "representatives communicated regularly and directly with AS Engine's representatives via electronic mail and by phone to support Vision's use of the Engine." (Dkt. No. 63 at 3.) However, AS Engine failed to allege sufficient facts, let alone present evidence, specifying the extent of parties' communications.[1] AS Engine's failure to present evidence to support the inference of sustained and substantial communications undermines its ability to meet its burden of establishing a prima facie case. *See Centurion Serv. Grp., LLC v. SBMC Healthcare, LLC,* 944 F.Supp.2d 617 (N.D.Ill. 2013). (finding that an unspecified number of email and telephone communications was insufficient to establish specific jurisdiction).

With respect to performance, the Lease did not envision wide-ranging contacts with Illinois. AS Engine's contractual obligation was to complete a discrete task: delivering the Engine to Vision in Arkansas. The Engine itself was never present in Illinois. Vision's contractual obligations were limited to making payments to a bank account located in Illinois.

---

[1] AS Engine has presented an e-mail exchange between Vision's Meers and BCI's Hollnagel, but, as previously discussed, BCI is not a party to this action. (Dkt. No. 55, Ex. 1, at 6-7.)

This case is more like *Lakeside Bridge and Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596 (7th Cir. 1979) (no personal jurisdiction where a contract, initiated by the defendant, required the forum-state plaintiff to complete the discrete task of manufacturing and shipping industrial parts and required the defendant only to accept and pay for the parts) than *Citadel*.[2] In *Citadel*, an Arkansas-based defendant contracted with an Illinois-based plaintiff for a "project development" in preparation of the construction of a medical office building in Arkansas. 536 F.3d at 763. The Seventh Circuit upheld specific personal jurisdiction in *Citadel* because, due to the nature of the contract, the Illinois-based plaintiff was required to undertake a substantial amount administrative work in Illinois to perform and the defendant was required not only to pay the plaintiff but also to stay in continuous contact with it during the course of performance. *Id*. Here, AS Engine does not allege that it was required to undertake a substantial amount work in Illinois in order to satisfy its obligations under the Lease, and there is no evidence that the parties contemplated remaining in continuous contact throughout the course of performance.

Although the Lease did envision a continuous relationship between parties whereby Vision would lease the Engine for a period of sixty months, Vision did not, for example, enter into a carefully structured, long-term franchise relationship that subjected it to exacting regulation by AS Engine in Illinois. *See Burger King*, 471 U.S. at 479–80. The Lease merely contemplated the single delivery of a single engine, for which Vision would make regular payments. Such obligations are not enough to subject Vision to personal jurisdiction. *See MAC Funding Corp. v. Ne. Impressions, Inc.*, 215 F.Supp.2d 978, 981–82 (N.D.Ill. 2002) (the mere fact that payment was to be sent to the plaintiff's office in Illinois was not a contact sufficient to

---

[2] Although the *Lakeside* opinion has been criticized, the Seventh Circuit, in its 2014 opinion in *Northern Grain,* expressly acknowledged the continued vitality of *Lakeside*. 743 F.3d at 494.

support exercise of personal jurisdiction over guarantor); *Ameritech Services, Inc. v. SCA Promotions, Inc.*, No. 99 C 4160, 2000 WL 283098, at *4 (N.D.Ill. March 6, 2000) (finding no personal jurisdiction over a Texas defendant who was obligated to mail payment from Texas to Illinois).

Moreover, the Lease contains a choice of law provision reflecting the parties' agreement that the Lease would be governed by, and construed in accordance with, the laws of the State of New York. Parties also consented to submit to the jurisdiction of the judicial courts of the State of New York. The inclusion of this New York choice of law provision cuts against the notion that Vision "purposefully availed [itself] of the benefits and protections of [Illinois'] laws" and therefore should have foreseen being haled into court in Illinois. *Burger King*, 471 U.S. at 482 (giving weight to a Florida choice of law clause in analyzing whether there was personal jurisdiction over a Michigan resident in Florida).

Not surprisingly, given the nature of personal jurisdiction analysis, both parties were able to cite cases supporting their arguments. Yet, having balanced the factors for and against a finding of specific personal jurisdiction, the court finds that AS Engine has not met its burden of showing that Vision purposefully availed itself of the privilege of doing business in Illinois such that Vision should have foreseen being haled into court here. Vision's only contacts with Illinois in connection with the Lease are its unspecified amount of telephone and email communications to AS Engine in Illinois (unaccompanied by evidence of which party initiated the contact) and its obligation to pay rent and maintenance reserves to a bank account located in Illinois. The case law makes clear that where a contract is neither negotiated nor performed in the forum state, communications and payments into the forum state, standing alone, are insufficient to establish specific jurisdiction over a nonresident defendant. *See Federated Rural Elec. Ins. Corp. v. Inland*

*Power and Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994) ("making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction."); *AIT Worldwide Logistics, Inc. v. Ramp Logic, Inc.*, No. 03–7661, 2004 WL 769399, at *3 (N.D.Ill., Apr.9, 2004); *Sungard Data Systems, Inc. v. Central Parking Corp.*, 214 F.Supp.2d 879, 882 (N.D.Ill., 2002). As the United States Supreme Court recently noted, "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant– not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014)).

Because the court finds that AS Engine has not established that Vision had the necessary minimum contacts to establish personal jurisdiction, the court need not determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476.

## CONCLUSION

For the reasons explained above, Visions's motion to dismiss for lack of personal jurisdiction [25] is granted. This case is ordered dismissed without prejudice to allow plaintiff AS Engine to pursue its action where personal jurisdiction over defendant Vision properly exists if the dispute cannot be settled. The court encourages settlement. Civil case terminated.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Judge, United States District Judge

Date: November 18, 2014

11